# United States District Court
# District of Massachusetts

WILLIAM CUMMINGS,
JOYCE CUMMINGS,
    Plaintiffs,

v.                               CIVIL ACTION NO. 09-12199-NMG

UNITED STATES OF AMERICA,
    Defendant.

## *REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (#16) AND DEFENDANT UNITED STATES' MOTION FOR SUMMARY JUDGMENT (#18)*

COLLINGS, U.S.M.J.

### *I. Introduction*

Plaintiffs William and Joyce Cummings ("the Cummings") brought this action against Defendant United States of America in the United States District Court for the District of Massachusetts on December 28, 2009. Subject matter

jurisdiction over this case is conferred by 28 U.S.C. §§ 1340 and 1346(a)(1) and 26 U.S.C. § 7422. (Compl. (#1) ¶ 4)

Defendant United States filed its answer to the complaint on March 31, 2010. (Def. United States' Answer (#8))  On June 14, 2011, Plaintiffs filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56 along with a memorandum in support of the motion and a number of exhibits including: the affidavit of William Cummings; transcripts of the depositions of William Cummings, John Dunn, Dennis Clarke, and Anne Struthers; and the TIF Agreement. (Pls.' Mot. for Summ. J. (#16); Mem. in Supp. of Pls.' Mot. for Summ. J. (#17 and Ex. 1-6))  On June 28, 2011, Defendant United States of America filed a memorandum in opposition to Plaintiffs' motion for summary judgment. (Def. United States' Opp'n to Pls.' Mot. for Summ. J. (#20))  Plaintiffs filed a reply memorandum in support of their motion for summary judgment on August 31, 2011. (Reply Mem. Supp. Pls.' Mot. for Summ. J. (#23))

On June 15, 2011, Defendant United States of America filed a motion for summary judgment along with a memorandum in support of its motion and exhibits including the 2000 Economic Development Incentive Program Annual Report; relevant tax return forms for the years 2001, 2002, and 2003; tax

return summaries; and the deposition of William Grant. (Def. United States' Mot. for Summ. J. (#18); Mem. Supp. Def. United States' Mot. for Summ. J. (#19); #18, Ex. 1-13)) Plaintiffs filed a response to Defendant's motion for summary judgment along with a memorandum in opposition to Defendant's motion on June 29, 2011. (Resp. to Stmt. of Material Facts in Def. United States' Mot. for Summ. J. (#21); Pls.' Mem. In Opp'n to Def.'s Mot. for Summ. J. (#22))

On October 13, 2011, the plaintiffs filed a further reply memorandum (Reply Mem. Supp. Pls.' Mot. for Summ. J. (#27)), and on October 18, 2011, the Court heard oral argument. The matter is therefore in a posture to be resolved.

## II. Factual Background

The relevant undisputed facts are as follows. Plaintiffs William and Joyce Cummings are a married couple residing in Winchester, Massachusetts. (#17 ¶ 1; #20 ¶ 1) In 1970, William Cummings formed Cummings Properties LLC ("Cummings Properties"), a commercial real estate development and property management business, and since then has formed related family-owned businesses. (#17 ¶¶ 2-3; #20 ¶¶ 2-3) Around February 1995, Cummings formed Beverly Commerce Park, Inc. ("BCPI"), a wholly owned corporate

subsidiary of Beverly Commerce Park Trust ("BCPT"), another Cummings enterprise wholly owned by William Cummings and organized under Massachusetts law.[1] (#1 ¶ 16; #17 ¶ 4; #20 ¶ 4)  BCPI[2] was formed to acquire the former headquarters of the United Shoe Machinery Corporation ("The Shoe") in Beverly, Massachusetts, a property which had been undergoing a period of decay and dilapidation since The Shoe's manufacturing operations ceased in the 1970s. (#17 ¶¶ 5-6; #20 ¶¶ 5-6)  Mostly vacant and reportedly draining its previous owner of millions of dollars each year, The Shoe was purchased by BCPI on April 29, 1996. (#17 ¶¶ 7, 9; #20 ¶¶ 7, 9)

During BCPI's consideration of development and renovation alternatives for The Shoe, it met with representatives from the City of Beverly and the Massachusetts Office of Business Development regarding tax incentives and other development programs, including Tax Increment Financing ("TIF") designed to facilitate enhanced investment in The Shoe. (#17 ¶ 11; #20 ¶ 11) On December 10, 1996, after a series of arm's length negotiations between BCPI

---

[1] Instead of calling BCPI a subsidiary of BCPT, Plaintiffs state that BCPI "eventually became" BCPT. (#17 ¶ 4)

[2] All references by Plaintiffs in their Statement of Undisputed Material Facts (#17) to BCPT have been changed to BCPI for purposes of clarity unless a distinction between the two entities is material.

representative James McKeown and representatives from the City of Beverly, the mayor of the City of Beverly and William Cummings, president of BCPI, signed a TIF Agreement for the Shoe Property, which by this time had been re-named the "Cummings Center." (#18 ¶ 6; #21 ¶ 6; #17 ¶¶ 13-14; #20 ¶¶13-14).

The TIF Agreement, with a duration of ten years, exempted from taxation 100 percent of the increased value of the Cummings Center above the agreed upon Adjusted Base Value of the property for the first five years of the agreement (July 1, 1996 - June 30, 2001) and 50 percent of the increased value above the Adjusted Base Value for the remaining five years of the TIF Agreement "in consideration" of BCPI's commitment to comply with certain terms. These terms included, among other things, the creation of at least 15 new, full time jobs, approximately one-third of which were for residents of the Beverly and Salem Economic Target Area ("ETA"), the investment of approximately $13,500,000 in real estate and personal property improvements within the first five years of the Agreement, and the submission of annual job creation and new investment reports to the City of Beverly Community Development Office. (#17, Ex. 4) The TIF Agreement stated that if BCPI failed to comply with the requirements of the Agreement, "the City… may (and at the

direction of the City Council, shall), take such action as it deems to be appropriate to discontinue this Agreement," including a request to decertify the project, which could result in the discontinuance of the Tax Increment Financing Exemption benefits "commencing with the fiscal year after which BCPI did not meet its commitments." (#17, Ex. 4; #18 ¶ 12; #21 ¶ 12) Decertification action could not be undertaken without first providing BCPI with at least thirty days' prior written notice explaining the grounds for decertification and giving BCPI the opportunity to cure any default by complying with the requirements. (#17, Exh. 4; #18 ¶ 12; #21 ¶ 12)

In each of the ten years in which the 1996 TIF Agreement was in place, BCPI complied with the terms of the Agreement. (#17 ¶ 16; #20 ¶ 16) Indeed, both parties agree that as a result of BCPI's development of the Cummings Center, the City of Beverly and the community at large saw economic returns in terms of job creation, increased local business revenues, increased tax revenues, and aesthetic gains in the transformation of The Shoe, a dilapidated eye-sore, into the Cummings Center, a restored historic building housing offices and retail space. (#17 ¶ 18; #20 ¶ 18)

BCPT, the 100 percent owner of BCPI, elected to be taxed as a Subchapter S corporation and to have BCPI taxed as a qualified subchapter S subsidiary,

causing BCPI to be disregarded as an entity separate from BCPT for federal tax purposes. (#18 ¶¶ 2, 4; #21 ¶¶ 2, 4) For the purposes of real property taxation, the City of Beverly uses a fiscal year that begins on July 1 and ends on June 30 the following year. (#17 ¶ 20; #20 ¶ 20) BCPI paid the City of Beverly the property taxes billed on the Cummings Center for the 2001, 2002, and 2003 calendar years.[3] (#17 ¶ 22; #20 ¶ 22) As an S corporation within the meaning of 26 U.S.C. § 1361(a), BCPT's assets, liabilities, and items of income, loss, deduction, and credit "passed through" to William Cummings,[4] BCPT's sole shareholder, for purposes of federal income tax filings in each of the pertinent years. (26 U.S.C.§ 1361(a); #17 ¶ 25; #20 ¶ 25)

BCPT and Plaintiffs William and Joyce Cummings, filing jointly as a married couple, timely filed their tax returns for the years 2001, 2002, and 2003, including all of the "passed through" items of income, loss, deduction and credit related to the Cummings Center for the corresponding periods. (#17 ¶¶

---

[3] Plaintiffs contend they paid the "non-exempt" portion of the total property taxes due on the Cummings Center, while Defendant contends that no tax was ever "due" on the percentage value of the property exempted under the TIF Agreement. Despite this issue of semantics, both parties agree on the dollar amount of property taxes paid on the Cummings Center for the given years.

[4] As an S corporation, BCPT was required to file a federal tax return using IRS Form 1120S, and the income, losses, deductions and credits were apportioned to the sole shareholder (Cummings) on Form K-1. The sole shareholder (Cummings) was then required to report the income, losses, deductions, and credits incurred by BCPT on his 1040 Form.

26-27; #20 ¶¶ 26-27) In their initial 2001, 2002, and 2003 filings, Plaintiffs deducted, on their joint tax return, the portion of property taxes actually owed and paid on the Cummings Center under the TIF Agreement.[5] (#17 ¶ 28; #20 ¶ 28) For the 2001 Calendar year, the Cummings paid property taxes totaling $197,052 on the Cummings Center, while in 2002 they paid $1,828,421, and in 2003 they paid $661, 303. (#17 ¶ 22; #20 ¶ 22)[6]

Subsequently, Plaintiffs and their accounting firm believed that the deductions originally taken had been understated. They timely filed amended tax returns and increased their real property tax deductions to the levels Plaintiffs *would* have owed had they not benefitted from the property tax exemptions received under the TIF Agreement; they also decreased respective depreciation deductions (which are not at issue in this case). (#17 ¶¶ 29-30; #20 ¶¶ 29-30) After making those adjustments, Plaintiffs' amended tax returns for 2001, 2002, and 2003 requested refunds of $507,988, $51,729, and $260,061, respectively. (#17 ¶ 30; #20 ¶ 30) On March 18, 2009, the Internal

---

[5] Again, both parties agree upon the dollar amount of deductions initially made, but Defendant denies Plaintiffs' labeling these initial deductions as "incorrect."

[6] Though Defendant denies Plaintiffs' breaking of the property taxes into exempt and non-exempt portions due, the record indicates, and Defendant does not dispute, that Plaintiffs paid the sums indicated for the given calendar years.

Revenue Service (IRS) denied each of the refund claims made by the Plaintiffs for the 2001, 2002, and 2003 tax periods. (#17 ¶ 31; #20 ¶ 31) Plaintiffs filed suit shortly thereafter on December 28, 2009. (#17 ¶ 32; #20 ¶ 32)

### III. Summary Judgment Standard

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40, 42 (1 Cir., 2005) (internal quotations marks and citation omitted). When considering a motion for summary judgment, "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).[7] The moving party bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1 Cir., 2003) (citations omitted). "Once the moving party avers the absence

---

[7] Rule 56 was amended effective December 1, 2010. The summary judgment standard is now set forth in Rule 56(a), but "[t]he standard for granting summary judgment remains unchanged." *Opthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 n.4 (1 Cir., 2011).

of genuine issues of material fact, the nonmovant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." *Fontánez-Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 54-55 (1 Cir., 2006) (internal quotation marks and citation omitted).

In determining whether summary judgment is proper, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Clifford v. Barnhart*, 449 F.3d 276, 280 (1 Cir., 2006). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986))(further internal quotation marks omitted).

### *IV. Discussion*

Plaintiffs' argument that they are, as a matter of law, entitled to prevail on their federal tax refund claims raised in Counts 1, 2, and 3 is grounded in I.R.C. § 164(a) (2006),[8] which allows taxpayers to deduct state and local real property taxes from their federal income tax returns "for the taxable year within which paid or accrued." (#17) Somewhat paradoxically, in order to prevail they must further demonstrate that the exempted portion of the real property taxes they seek to deduct also qualifies as "gross income" under I.R.C. § 61 (2006), and that, further, these exempted taxes would qualify as nonshareholder capital contributions excluded from the calculation of gross income under I.R.C. § 118 (2006).

The Court rules that Plaintiffs' motion must be denied (and Defendant's motion must be granted) as a matter of law because the exempted amounts which Plaintiffs seek to deduct in their refunds are not "taxes" within the meaning of § 164 and thus cannot be deducted pursuant to § 164(a). Because the Court finds that the exempted amounts are not "taxes" within the meaning of § 164, it declines to address whether the exempted amounts may be considered "paid or accrued" and whether the amounts may be denoted as

---

[8] The Court has replaced citations to the Internal Revenue Code, "26 U.S.C." with "I.R.C."

"income" and be protected from taxation as nonshareholder capital contributions.⁹

In their memorandum in support of their motion for summary judgment, Plaintiffs rely exclusively upon I.R.C. § 164(a)(1), which states that deductible taxes include "[s]tate and local, and foreign, real property taxes," arguing that they are entitled to deduct that portion of the real property tax on the Cummings Center which they did not pay because of the exemption. (#17) In order for deductions to be taken pursuant to § 164(a), they must first qualify as real property taxes, which are defined in Treas. Reg. § 1.164-3(b) (as amended in 1964)¹⁰ as "taxes imposed on interests in real property and levied for the general public welfare. . . ." Treas. Reg. § 1.164-3(b); *Black v. Comm'r*, 60 T.C. 108, 113 (U.S. Tax Ct. 1973).¹¹ Thus under Treas. Reg. § 1.164-3(b), deductions pursuant to § 164(a)(1) may *only* be taken on taxes actually

---

⁹

At oral argument, Plaintiffs' counsel conceded that if the Court were to find that the Defendant's interpretation of § 164 was indeed correct, Plaintiffs' claims would fail. However, the Court must say that even if Plaintiffs' view of § 164 was correct, the Court would not be able to rule that the amount that the Plaintiffs did not have to pay because of the tax exemption is "income" so as to be able to be claimed as a capital contribution. *Snyder v. Commissioner,* 894 F.2d 1337 (Table), 1990 WL 6953, *4 (6 Cir., Feb. 1, 1990).

¹⁰

The Court has replaced citations to "26 C.F.R." with "Treas. Reg."

¹¹

While decisions by the Tax Court are not binding, "uniform administration would be promoted by conforming to them where possible." *Dobson v. Comm'r*, 320 U.S. 489, 502 (1943).

imposed on interests in real property.

Furthermore, Treas. Reg. § 1.164-1 (as amended in 1978), which states that generally, "taxes are deductible only by the person upon whom they are imposed," reinforces the notion that real property taxes must first be imposed before they may be deducted for federal income tax purposes. *See Hynes v. Comm'r*, 74 T.C. 1266, 1289 (U.S. Tax Ct. 1980) (holding petitioner could not deduct real estate taxes imposed on property he did not own because these taxes were not imposed on him). In order to determine upon whom local property taxes are imposed, state and local laws govern. *See Magruder v. Supplee*, 316 U.S. 394, 396 (1942) (finding that the laws of Maryland and Baltimore controlled in order to determine upon whom property taxes were imposed).

Looking to Massachusetts law, the Court finds that tax increment financing (TIF) requires that "[t]axes on property eligible for exemption under Mass. Gen. L. c. 40, § 59[12] shall be assessed only on that portion of the value of the property that is not exempt hereunder." 760 Mass. Code Regs. sec. 22.05(4)(c) (2011). By definition, amounts exempted from tax assessment

---

[12] Authorization for Massachusetts cities and towns to adopt and prosecute a tax increment financing plan is granted under Mass. Gen. L. c. 40, § 59 (2011).

under Massachusetts TIF agreements cannot be deducted under § 164 because the exempted amounts of tax are never assessed or imposed on the taxpayer in the first place. Therefore the value of the exempted portion of the Cummings Center in 2001, 2002, and 2003 cannot be considered a "real property tax" under § 164 and cannot be deducted from Plaintiffs' federal income tax return.

Even under a more general definition, the exempted amounts Plaintiffs seek to deduct would not qualify as "taxes." Taxes more generally are defined to include "every burden that may lawfully be laid upon the citizen by virtue of the taxing power," and are considered to be "enforced contribution[s], exacted pursuant to legislative authority... and imposed and collected for the purpose of raising revenue to be used for public or governmental purposes, and not as a payment for some special privilege granted or service rendered." Rev. Rul. 61-152, 1961-2 C.B. 42 (citation omitted). This more general administration definition of a "tax" still suggests that its *assessment* is a fundamental part of its definition, stating that a "tax" is an "enforced contribution... imposed and collected." *Id.* It also characterizes taxes as "every burden that *may lawfully* be laid upon the citizen by virtue of the taxing power." *Id.* (emphasis added). However, even under this looser standard, the exempted values still would not be considered a "tax" since such values could not lawfully be assessed on the

Cummings Center, a property that is the subject of a TIF Agreement, and which, under Massachusetts law, may not have taxes assessed on the exempted portions of its value. 760 Mass. Code Regs. sec. 22.05(4)(c).

Because the exempted values cannot, as a matter of law, be considered "taxes" under § 164, Plaintiffs' motion for summary judgment must fail. Defendant, on the other hand, is entitled to prevail on its motion for summary judgment. Plaintiffs have failed to show a genuine dispute of material fact regarding the nature of the tax exemption under the TIF Agreement and the definition of "tax" as it pertains to deductions pursuant to § 164.

## V. Recommendation

For all the reasons stated, I RECOMMEND that Defendant United States' Motion For Summary Judgment (#18) be ALLOWED and that Plaintiffs' Motion For Summary Judgment (#16) be DENIED. I FURTHER RECOMMEND that Final Judgment enter for the Defendant.

## VI. Review by the District Judge

The parties are hereby advised that any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1 Cir., 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1 Cir., 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1 Cir., 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1 Cir., 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1 Cir.,

1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

*/s/ Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

October 20, 2011.